UNITED STATES DISTRICT COURT
DISTRICT OF COLUMBIA

Holding a Criminal Term
Grand Jury Sworn in on November 3, 2006

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | |
| | : | |
| | : | Cr. No. |
| | : | |
| v. | : | Grand Jury Original |
| | : | |
| | : | VIOLATIONS: |
| | : | |
| CHARLES ANTHONY WEHAUSEN, | : | 18 U.S.C. Section 371 |
| a/k/a TONY WEHAUSEN, | : | (Conspiracy) |
| | : | |
| | : | 18 U.S.C. Section 1341 |
| | : | (Mail Fraud) |
| | : | |
| Defendant. | : | 18 U.S.C. Section 1346 |
| | : | (Honest Services Fraud) |
| | : | |
| | : | 18 U.S.C. Section 2 |
| | : | (Aiding and Abetting and |
| | : | Causing an Act to be Done) |
| | : | |
| | : | 18 U.S.C. Section 981 |
| | : | (Forfeiture) |
| | : | |
| | : | 28 U.S.C. Section 2461 |
| | : | (Forfeiture) |

**COUNT ONE**
**(Conspiracy)**

INTRODUCTORY ALLEGATIONS

At times material herein:

1. The Preventive Maintenance Services Company, doing business as PM Services Company, 2220 Central Avenue, St. Petersburg, FL 33712, (hereinafter sometimes referred to as

"PM Services") had a contract with the U.S. General Services Administration (hereinafter sometimes referred to as "GSA") to provide operation and maintenance of mechanical equipment at the Federal Cohen Building, 330 Independence Avenue, S.W., Washington, D.C., and the Federal Switzer Building, 330 C. Street, S.W., Washington, D.C.  PM Services maintained a Washington, D.C., office in the Cohen Building.

2. Defendant CHARLES ANTHONY WEHAUSEN (hereinafter sometimes referred to as "WEHAUSEN") was employed by PM Services as a chief engineer and project manager at the Federal Cohen and Switzer Buildings. As a chief engineer and project manager at PM Services, WEHAUSEN owed duties of fidelity, honesty, loyalty and care to PM Services.

3. WOS was employed by PM Services as a project manager at the Federal Cohen and Switzer Buildings. As a project manager at PM Services, WOS owed duties of fidelity, honesty, loyalty and care to PM Services.

4. Craig Anderson (hereinafter sometimes referred to as "Anderson") owned and operated C.A. Anderson, a company specializing in mechanical insulation work in the greater Washington, D.C. area. Anderson periodically performed mechanical insulation work for PM Services.

5. Bahram Shahriari (hereinafter sometimes referred to as "Shahriari") was the owner of the Applied Power Group (hereinafter sometimes referred to as "APG"). APG was in the business of providing heating, ventilation and air conditioning equipment and technical support in the greater Washington, D.C. area. Shahriari and APG periodically performed work for PM Services. In order to perform these jobs, Shahriari and APG would ulitize the services of other mechanical contractors (hereinafter sometimes referred to as "subvendors").

6.      Rene Lillicotch (hereinafter sometimes referred to as "Lillicotch") operated Precision Mechanical Services (hereinafter sometimes referred to as "Precision") and E&M Sheet Metal and Roofing, Inc., (hereinafter sometimes referred to as "E&M"), companies specializing in commercial mechanical services in the greater Washington, D.C. area. Rene Lillicotch individually and through Precision, periodically performed mechanical work for PM Services.

7.      JB operated a mechanical services company (hereinafter sometimes referred to as "ASI") specializing in commercial mechanical services in the greater Washington, D.C. area. JB individually and through ASI, periodically performed mechanical services for PM Services.

8.      Defendant CHARLES ANTHONY WEHAUSEN and WOS were the primary contacts at PM Services for all business matters involving Anderson, Shahriari, Lillicotch and JB (hereinafter sometimes referred to as "the subcontractors") including bidding for jobs that the subcontractors and their companies would perform on behalf of PM Services.

**The Conspiracy**

9.      From in or about December of 2000 and continuing thereafter through at least on or about July 22, 2003, in the District of Columbia and elsewhere, the defendant CHARLES ANTHONY WEHAUSEN did unlawfully and knowingly conspire, combine, confederate, and agree with Anderson, Shahriari, Lillicotch, JB, WOS and other persons both known and unknown to the United States to commit offenses against the United States, that is devise, participate in, and execute a scheme and artifice to defraud PM Services, to obtain PM Services money, funds and property through false material pretenses, representations and promises and to deprive PM Services of its intangible right to CW's and WOS' honest services as PM Services employees, and in the execution of such scheme, to knowingly cause to be delivered by the United States Postal Service and by

private and commercial interstate carrier matters and things in violation of Title 18, United States Code, Sections 1341 (mail fraud) and 1346 (honest services fraud).

## Purpose of the Conspiracy

10.     A purpose of the conspiracy was for defendant CHARLES ANTHONY WEHAUSEN and co-conspirators, to fraudulently obtain moneys, funds and property from PM Services for their own use and benefit and to further the scheme by various means, including omissions of material fact, false material pretenses, representations and promises.

## Manners and Means of the Conspiracy

11.     As part of the conspiracy, defendant CHARLES ANTHONY WEHAUSEN, WOS, the subcontractors and other co-conspirators used the following manners and means, among others:

(1)     It was part of the conspiracy that defendant CHARLES ANTHONY WEHAUSEN, and the subcontractors created and submitted to PM Services officials invoices containing artificially and falsely inflated prices for work performed or to be performed by the subcontractors and their companies.

(2)     It was further part of the conspiracy that defendant CHARLES ANTHONY WEHAUSEN and WOS caused PM Services to issue purchase orders for the subcontractors' labor and materials also containing artificially and falsely inflated prices. Defendant CHARLES ANTHONY WEHAUSEN and WOS caused FedEx, a commercial interstate carrier, to be used to send the falsely inflated purchase orders from PM Services office in Washington, D.C. to PM Services headquarters in Florida.

(3) It was further part of the conspiracy that after the subcontractors received payments from PM Services based on the artificially and falsely inflated invoices and purchase orders, the subcontractors provided kickback payments via checks and cash to WEHAUSEN and WOS.

(4) It was further part of the conspiracy that defendant CHARLES ANTHONY WEHAUSEN instructed subcontractors to issue checks containing the kickback payments in his name and the name of TNT Heating and Air Conditioning. WEHAUSEN thereafter deposited said checks in a bank account in the name of TNT Heating and Air Conditioning that he controlled and then used the deposited funds for his personal benefit through withdrawals and transfers to other accounts under his control.

(5) It was further part of the conspiracy that in order to keep track of the kickback payments paid or to be paid by the subcontractors, defendant CHARLES ANTHONY WEHAUSEN created a documents entitled "Master Job Assessment" and "Evaluation" and other documents containing the subcontractors' names that itemized the true price for work performed by the subcontractors, the artificially inflated price being submitted to PM Services, and the amount of the kickbacks.

(6) It was further part of the conspiracy that defendant CHARLES ANTHONY WEHAUSEN, WOS and the subcontractors concealed the kickback payments from PM Services officials, thereby depriving PM Services of its right to CW's and WOS' honest and loyal services.

(7) It was further part of the conspiracy that defendant CHARLES ANTHONY WEHAUSEN did not pay income tax on kickback payments he received from the subcontractors nor did he report said payments as income on his Federal income tax returns, all in order to further conceal the scheme.

**Overt Acts**

12. Within the District of Columbia and elsewhere, in furtherance of the above-described conspiracy and in order to carry out the objects thereof, defendant CHARLES ANTHONY WEHAUSEN and others known and unknown to the Grand Jury, committed the following overt acts, among others:

(1) On or about February 7, 2002, WEHAUSEN and Shahriari caused to be issued APG invoice no. P02062-196 to E&M for fictitious consulting services in the amount of $20,000.

(2) On or about February 19, 2002, WEHAUSEN and Lillicotch caused to be issued Precision check no. 11347, for $20,000, made payable to APG and relating to APG fictitious invoice no. P02062-196.

(3) On or about February 28, 2002, WEHAUSEN and Shahriari caused to be issued APG check no. 0360, for $16,000, made payable to TNT and relating to APG fictitious invoice no. P02062-196.

(4) On or about March 29, 2002, WEHAUSEN caused purchase order no. 1329, containing a falsely inflated cost figure of $67,463 for materials and mechanical work Precision was to perform to be issued and sent via FedEx from PM Services' Washington, D.C. office to PM Services' headquarters office, 2220 Central Avenue, St. Petersburg, FL 33712.

(5) On or about May 17, 2002, WEHAUSEN caused purchase order no. 1383, containing a falsely inflated cost figure of $11,593.57 for materials and mechanical work ASI was to perform, to be issued and sent via FedEx from PM Services' Washington, D.C. office to PM Services' headquarters office, 2220 Central Avenue, St. Petersburg, FL 33712.

(6) On or about June 7, 2002, WEHAUSEN caused PM Services check number 13451 for $18,000, relating to a deposit on the materials portion of purchase order no. 1329 to be issued and sent from PM Services' headquarters office, 2220 Central Avenue, St. Petersburg, FL 33712 to Precision.

(7) On or about June 19, 2002, WEHAUSEN and Lillicotch caused invoice no. 60709, containing the remaining falsely inflated cost figure of $49,462.65 on false purchase order no. 1329 for mechanical work Precision performed to be submitted to PM Services.

(8) On or about August 27, 2002, WEHAUSEN and JB caused ASI invoice no. 2R1004-020, containing a falsely inflated cost figure of $11,593.57 for materials and mechanical work ASI performed, to be issued and submitted to PM Services via the United States Postal Service from ASI in Maryland to PM Services' headquarters office, 2220 Central Avenue, St. Petersburg, FL 33712.

(9) On or about August 29, 2002, WEHAUSEN caused PM Services check number 15400 for $49,462.65, relating to purchase order no. 1329 to be issued and sent from PM Services' headquarters office, 2220 Central Avenue, St. Petersburg, FL 33712 to Precision.

(10) On or about October 3, 2002, WEHAUSEN caused purchase order no. 1535, containing a falsely inflated cost figure of $14,316, for work performed or to be performed by APG (through a subvendor) to be issued and sent via FedEx from PM Services' Washington, D.C. office to PM Services' headquarters office, 2220 Central Avenue, St. Petersburg, FL 33712.

(11) On or about October 22, 2002, WEHAUSEN and Anderson caused invoice no. 201589, containing a falsely inflated cost figure of $3,920.00 for insulation work by Anderson, to be issued and submitted to PM Services.

(12)    On or about October 22, 2002, WEHAUSEN caused purchase order no. 1560, containing a falsely inflated cost figure of $3,920.00 for insulation work by Anderson, to be issued and sent via FedEx from PM Services' Washington, D.C. office to PM Services' headquarters office, 2220 Central Avenue, St. Petersburg, FL 33712.

(13)    On or about October 23, 2002, WEHAUSEN caused PM Services check number 15704 for $3,920.00 to be issued and sent from PM Services' headquarters office, 2220 Central Avenue, St. Petersburg, FL 33712 to Anderson based on invoice no. 201589.

(14)    On or about November 1, 2002, WEHAUSEN caused PM Services check number 15737 for $11,593.57 relating to purchase order no. 1383, to be issued and sent from PM Services' headquarters office, 2220 Central Avenue, St. Petersburg, FL 33712 to ASI in Maryland.

(15)    On or about December 10, 2002, WEHAUSEN caused purchase order number 1609, containing a falsely inflated cost figure of $20,932.06 for work performed or to be performed by APG (through a subvendor) to be issued and sent via FedEx from PM Services' Washington, D.C. office to PM Services' headquarters office, 2220 Central Avenue, St. Petersburg, FL 33712.

(16)    On or about January 15, 2003, WEHAUSEN and Shahriari caused invoice no. P02063-339, containing a falsely inflated cost figure of $14,316.00 for mechanical work performed by APG (through a subvendor), to be issued and submitted to PM Services.

(17)    On or about April 18, 2003, WEHAUSEN caused PM Services check number 16875 for $35,248.06 to be issued and sent from PM Services' headquarters, 2220 Central Avenue, St. Petersburg, FL 33712 to APG based on purchase orders 1535 and 1609 and invoice no. P02063-339.

(18) On or about the following dates, WEHAUSEN and the below listed subcontractor caused additional checks representing kickback payments from subcontractors to be issued to WEHAUSEN and TNT:

|    | Ck. No. | To | Approx. Date | Amount | Subcontractor Issuing Check |
|----|---------|----|--------------|--------|----------------------------|
| a. | 6155 | Charles Wehausen | 10/11/01 | $7,000 | JB |
| b. | 6456 | Charles Wehausen | 01/18/02 | $8,000 | JB |
| c. | 0349 | TNT | 02/20/02 | $8,600 | Shahriari/APG |
| d. | 6728 | TNT | 04/24/02 | $8,000 | JB |
| e. | 0394 | TNT | 04/29/02 | $7,125 | Shahriari/APG |
| f. | 0398 | TNT | 05/06/02 | $6,375 | Shahriari/APG |
| g. | 0414 | TNT | 06/11/02 | $6,000 | Shahriari/APG |
| h. | 0421 | TNT | 06/24/02 | $5,800 | Shahriari/APG |
| i. | 0425 | TNT | 07/10/02 | $2,397.75 | Shahriari/APG |
| j. | 0439 | TNT | 08/12/02 | $1,760.38 | Shahriari/APG |
| k. | 0450 | TNT | 09/03/02 | $602.50 | Shahriari/APG |
| l. | 0451 | TNT | 09/03/02 | $5,332.50 | Shahriari/APG |
| m. | 7224 | TNT | 9/20/02 | $8,000 | JB |
| n. | 7293 | Charles Wehausen | 10/07/02 | $11,000 | JB |
| o. | 7320 | TNT | 10/15/02 | $3,410 | JB |
| p. | 7399 | TNT | 11/05/02 | $8,000 | JB |
| q. | 7460 | TNT | 11/25/02 | $2,500 | JB |
| r. | 7566 | TNT | 01/06/03 | $1,750 | JB |
| s. | 0501 | TNT | 01/17/03 | $1,043 | Shahriari/APG |
| t. | 7947 | TNT | 04/24/03 | $1,243.75 | JB |
| u. | 0542 | TNT | 05/02/03 | $4,042 | Shahriari/APG |

| | | | | | |
|---|---|---|---|---|---|
| v. | 0543 | TNT | 05/02/03 | $3,010.07 | Shahriari/APG |
| w. | 0544 | TNT | 05/08/03 | $1,000 | Shahriari/APG |
| x. | 0571 | TNT | 07/15/03 | $3,100 | Shahriari/APG |
| y. | 5643 | TNT | 06/10/03 | $2,076 | JB |
| z. | 5817 | TNT | 07/22/03 | $1,276.25 | JB |

**(Conspiracy, Aiding and Abetting, and Causing an Act to be Done, in violation of Title 18, United States Code, Sections 371 and 2.)**

**COUNTS TWO THROUGH FOUR**
**(Mail Fraud and Honest Services Fraud)**

EXECUTION OF THE SCHEME AND ARTIFICE

13. The Grand Jury re-alleges the allegations contained in paragraphs 1 through 8 of Count One as though set forth in full in these counts.

14. The Grand Jury re-alleges all the allegations contained in paragraphs 10 and 11 of Count One as describing the scheme to defraud PM Services, to obtain PM Services money, funds and property through false material pretenses, representations and promises and to deprive PM Services of its intangible right to WEHAUSEN'S and WOS' honest services as PM Services employees.

15. On or about the dates listed for each count below, in the District of Columbia and elsewhere, defendant CHARLES ANTHONY WEHAUSEN and others both known and unknown to the Grand Jury, for the purpose of executing the above-described scheme and artifice and attempting to do so, knowingly caused to be delivered by FedEx, a commercial interstate carrier according to the directions thereon, the matters and things listed below:

| Count | Approx. Date | Item | Sent Via FedEx From | Sent Via FedEx To |
|---|---|---|---|---|
| 2 | 10/3/02 | PM Services Purchase Order no. 1535 | PM Services, 330 Independence Avenue, S.W., Washington, D.C. | PM Services, 2220 Central Avenue, St. Petersburg, FL 33712 |
| 3 | 10/22/02 | PM Services Purchase Order no. 1560 | PM Services, 330 Independence Avenue, S.W., Washington, D.C. | PM Services, 2220 Central Avenue, St. Petersburg, FL 33712 |
| 4 | 12/10/02 | PM Services Purchase Order no. 1609 | PM Services, 330 Independence Avenue, S.W., Washington, D.C. | PM Services, 2220 Central Avenue, St. Petersburg, FL 33712 |

**(Mail Fraud, Honest Services Fraud, Aiding and Abetting and Causing an Act to be Done, in violation of Title 18, United States Code, Sections 1341, 1346 and 2.)**

## NOTICE OF FORFEITURE

(18 U.S.C. § 981, 28 U.S.C. § 2461, and Fed. R. Crim. P. 32.2(b)(1))

1.   The violations alleged in Counts Two through Four of this Indictment are realleged and incorporated by reference for the purpose of alleging forfeiture to the United States of America pursuant to the provisions of Title 18, United States Code, Section 981(a)(1)(C) and Title 28, United States Code, Section 2461(c).

2.   Upon conviction of one or more of the offenses alleged in Counts two through four of this Indictment the defendant, CHARLES ANTHONY WEHAUSEN, shall forfeit to the United States, pursuant to 18 U.S.C. § 981(a)(1)(C) (as incorporated by 28 U.S.C. § 2461(c)), any property constituting or derived from proceeds obtained directly or indirectly as a result of the said violations, including, but not limited to, the following: **$373,500**, which represents a sum of money equal to the amount of money constituting, or derived from, proceeds obtained, directly or indirectly, as the

result of a mail fraud scheme, in violation of 18 U.S.C. § 1341, for which the defendant is jointly and severally liable.

3. Pursuant to 21 U.S.C. § 853(p), as incorporated by 28 U.S.C. § 2461(c), the defendant shall forfeit substitute property, up to the value of the amount described above, if, by any act or omission of said defendant, the property identified above as subject to forfeiture

    a. cannot be located upon the exercise of due diligence;

    b. has been transferred, sold to or deposited with a third party;

    c. has been placed beyond the jurisdiction of the court;

    d. has been substantially diminished in value; or

    e. has been commingled with other property which cannot be divided without difficulty.

All in accordance with 28 U.S.C. § 2461(c) (incorporating 18 U.S.C. § 981(a)(1)) and Rule 32.2(a), Federal Rules of Criminal Procedure.

**(Criminal Forfeiture pursuant to Title 18, United States Code, Section 981;Title 28 United States Code, Section 2461)**

A TRUE BILL.


FOREPERSON


_____
ATTORNEY FOR THE UNITED STATES
AND FOR THE DISTRICT OF COLUMBIA